**LOUIS REMY and MADONA REMY, Plaintiffs**
**v.**
**FORD MOTOR COMPANY, Defendant**

Case No. SX-95-CV-357

Superior Court of the Virgin Islands

Division of St. Croix

November 30, 2006

G. LUZ JAMES, ESQ., St. Croix, U.S.V.I., *Attorney for Plaintiffs*.

DARYL BARNES, ESQ., Bryant, Barnes, Moss and Beckstedt, LLP, St. Croix, U.S.V.I., *Attorney for Defendant*.

DONOHUE, *Judge*

## MEMORANDUM OPINION

(November 30, 2006)

This matter is before the Court on Third-Party Defendant Ford Motor Company's Motion to Dismiss for Spoliation of Evidence or, in the alternative for Lack of Prosecution. For the following reasons, Defendant's motion is GRANTED on both grounds.

# I. BACKGROUND

In this action for damages, original Plaintiffs Clarence and Carrol Nathaniel ("Nathaniels") allege that on March 29, 1994, they were passengers in a 1993 Ford Ranger pickup truck ("truck" or "vehicle") with Louis Remy ("Remy") when Remy lost control of his vehicle, ran off the shoulder of the road and impacted a tree. The Nathaniels allege that they suffered injuries as a result. According to Louis Remy's interrogatory responses, he claims that prior to the accident, the truck's steering wheel was not operating correctly, and that he made several unsuccessful attempts to have the vehicle serviced by the local Ford dealer. After the accident, Remy had the vehicle successfully inspected by Mr. Roy Gumbs, his own mechanic. Mr. Gumbs allegedly found defects in the truck, defects that Remy asserts are attributable to Ford Motor Company ("Ford"), the manufacturer of the truck. However, after Remy's mechanic inspected the truck, the truck disappeared. Remy claims that he turned the truck over to his insurance company and since then he has been unable to recover or inspect the vehicle. Yet Ford never had an opportunity to inspect the truck, nor does the vehicle have any independent inspection reports. Precisely when Remy turned the truck over to the insurance company is unclear because discovery in this matter is incomplete. Based on the facts on record, it is clear that the current location and condition of the truck are unknown.

On May 31, 1995, the Nathaniels filed a complaint against Remy. Remy answered, *inter alia,* that the damages alleged in the complaint were the result of acts or omissions of a third party and that his liability was subordinate to the negligence of that third party. On March 29, 1996, Louis Remy and his wife Madona Remy (together "Remys") filed a third-party complaint against Ford. The Remys' third-party complaint alleges that the vehicle Remy was operating at the time of the accident was defective and dangerous. The Remys theorize, *inter alia,* that the vehicle's steering and accelerator systems were defectively designed and/or manufactured. On March 24, 2000, the Nathaniels and the Remys, stipulated to the dismissal of the Nathaniels' action, leaving the Remys as the sole plaintiffs and Ford as the sole defendant in this matter.

On November 18, 1996, Ford sent the Remys its first set of interrogatories and demand for production of documents. When no response to Ford's discovery requests was forthcoming, Ford's attorney

wrote several letters to Plaintiffs, requesting a reply to its discovery requests and attempting to meet and confer to discuss mounting discovery issues. The Remys did not respond. On June 12, 1997, over six months after Ford's initial requests, the Remys finally responded to Ford's first set of discovery requests. The Court's factual analysis is substantially based on these responses because they are the Remys only responses to discovery thus far. On July 11 1997, Ford served the Remys with expert interrogatories and also requested dates to schedule the Remys' depositions. Over the next three years, the Remys failed to respond to Ford's expert interrogatories or Ford's request for depositions, despite correspondence notifying the Remys that their responses to Ford's expert interrogatories were long overdue. On May 22, 2001, Ford outlined deficiencies within the Remys' responses to Ford's first set of interrogatories. The Remys have yet to respond with supplementation or objections to Ford's initial discovery requests although these interrogatory requests were served on the Remys, over a decade ago, in November of 1996. During the pendency of this litigation the Remys have not requested a single document from Ford. Nor have they propounded a single interrogatory or noticed a single deposition. Finally, on July 29, 2005, Ford filed its Motion to Dismiss for Spoliation of Evidence and Lack of Prosecution that is presently before the court. The Remys' response to Ford's Motion to Dismiss was filed almost one year later, on June 6, 2006 utterly out of time and unresponsive to the issues raised in Defendants' Motion to Dismiss.

## II. DISCUSSION

### A. Spoliation of Evidence

■ Spoliation of evidence is "the destruction, or the significant and meaningful alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell Bd. Of Edu.*, 243 F.3d 93, 107 (2d Cir. 2001); *Baxt v. Liloia*, 714 A.2d 271, 155 N.J. 190, 204, (1998), citing BLACK'S LAW DICTIONARY 1257 (5th ed.1979). In a civil action spoliation occurs when evidence pertinent to the action is destroyed, thereby interfering with the action's proper administration and

disposition.[1] *Aetna Life and Casualty Co., v. Imet Mason Contractors*, 707 A.2d 180, 309 N.J. Super. 358, 364 (App. Div. 1998), citing *Hirsh v. General Motors Corp.*, 628 A.2d 1108, 266 N.J. Super. 222, 234 (1993).

 When evidence is spoiled, courts have the authority to impose sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994); *Aetna Life and Casualty Co.*, 309 N.J. Super. 358, 707 A.2d 180 (1998). Sanctions can include: (1) an adverse inference to be drawn against the spoliator, (2) dismissal with prejudice, or (3) suppression of evidence, *Hirsh*, 266 N.J. Super at 257. Sanctions imposed by a trial court will not be disturbed on appeal if they are just and reasonable under the circumstances. *Aetna Life and Casualty*, 309 N.J. Super. at 364. Dismissal, is "normally ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party." *Johnson v. Mountainside Hosp., Respiratory Disease Assoc.*, 488 A.2d 1029, 199 N.J. Super. 114, 119 (App. Div. 1985), *cert. denied*, 122 N.J. 188, 584 A.2d 248 (1990). In cases that warrant dismissal, the spoliation has gone to the very foundation of the cause of action, or the party spoiling the evidence has done so deliberately. *Abtrax Pharmaceuticals, Inc. v. Elkins Sinn, Inc.*, 655 A.2d 1368, 139 N.J. 499, 514 (1995).

 In *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76 (3d Cir. 1994), the Third Circuit Court of Appeals provided three considerations for determining whether dismissal is appropriate when evidence has been lost, altered or destroyed as a result of the acts or omissions of a litigant: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct in the future. *Id.* at 79. The Court will address each *Schmid* factor in turn.

---

[1] The evidentiary rationale for the spoliation inference is the common sense observation that a party who has notice that [evidence] is relevant to litigation and who proceeds to destroy [it] is more likely to have been threatened by [that evidence] than is a party in the same position who does not destroy evidence. *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994); MARGARET M. KOESEL AND TRACEY L. TUMBULL, SPOLIATION OF EVIDENCE: SANCTIONS AND REMEDIES FOR DESTRUCTION OF EVIDENCE IN CIVIL LITIGATION 266 (Daniel F. Gourash ed., ABA Publishing 2006.)

## I. Remy is at fault for destroying the truck

■ Under *Schmid,* for the purposes of determining whether dismissal is appropriate under a spoliation inference, the Court must consider the degree of fault of the party who altered or destroyed the evidence. *Id.* A duty to preserve evidence arises when there is: (1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm to the defendants; and (4) evidence relevant to the litigation. *Quaglietta v. Nissan Motor Co. Ltd.,* 2000 WL 1306791 (D.N.J.); *Aetna Life and Casualty Co,,* 309 N.J. Super. at 366; *See also Velasco v. Commercial Bldg. Maintenance Co.,* 169 Cal. App. 3d 874, 215 Cal. Rptr. 504 (1985) (setting forth the elements to determine when a duty to preserve evidence arises). The duty to preserve potentially relevant evidence can arise prior to the commencement of a lawsuit if it is reasonably foreseeable that a lawsuit will be filed. *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2nd Cir. 2001); *Kalumetals, Inc. v. Hitachi Magnetics Corps.,* 21 F. Supp. 2d 510, 520 (W.D. Pa. 1998); *Moyers v. Ford Motor Co.,* 941 F. Supp. 883, 884 (E.D. Mo. 1996). A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit. *See, e.g., Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D. Pa. 1996) (citing *Baliotis v. McNeil,* 870 F. Supp. 1285, 1290 (M.D. Pa. 1994)); *Shamis v. Ambassador Factors Corp.,* 34 F. Supp. 2d 879, 888-89 (S.D.N.Y. 1999) (asking whether the party "knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation"); *Bass v. General Motors Corp.,* 929 F. Supp. 1287, 1288 (W.D. Mo. 1996) (same). A party who breaches this duty by destroying relevant evidence or by allowing relevant evidence to be destroyed may be sanctioned by the court. *See, e.g., Howell,* 36 Fed. R. Serv. 3d (Callaghan) 945, 168 F.R.D. 502, 505 (M.D. Pa 1996); *Telecom Intn'l Am. Ltd. v. AT & T Corp.,* 189 F.R.D. 76, 81 (S.D.N.Y. 1999).

In *Quaglietta,* the Plaintiff alleged that the Defendant, Nissan Motor Co. negligently manufactured the seatbelt and roof system in a 1987 Nissan truck that the plaintiff was driving when he suffered injuries in a two car collision. *Quaglietta,* 2000 WL 1306791 at 1. The Plaintiff in *Quaglietta* took pictures of the truck after the accident then sold the truck for salvage thereby never making the truck available to Defendant

Nissan, for inspection. *Quaglietta,* 20000 WL 1306791 at 3. In *Quaglietta,* the Court held that the Plaintiff had a duty to preserve the truck because the Plaintiff's conduct demonstrated that litigation was reasonably foreseeable with the defendant, and imposed sanctions against the Plaintiff for spoliation of evidence. *Id.*

Remy's conduct demonstrates that he was aware of the probability of a claim against Ford and that he was also aware that the truck was critical evidence in this case. According to Louis Remy's response to Ford's initial discovery request, he maintains that he had difficulty with the truck's steering prior to the accident. As a result, Remy claims that he made several unsuccessful attempts to have the truck serviced by the local Ford dealer. Thereafter, Remy took the damaged truck to his own expert for testing and inspection *after* the accident. Notably, Remy intends to proffer this mechanic as an expert. These facts taken together are indicative that Remy realized that litigation with Ford was likely. Additionally, the foreseeability of harm to Ford in destroying the truck is apparent because the truck is clearly the most important piece of liability evidence in this matter. At all times relevant to this litigation Remy owned the vehicle in question and as owner controlled the preservation or destruction of the truck. By discarding the truck, Remy took away all possibilities for Ford to inspect the truck and prepare a proper defense, including developing evidence as to whether the truck's steering wheel was actually defective. Accordingly, this court finds that Remy had a duty to preserve the truck, Remy breached that duty, and as such, Remy was at fault for destroying the truck, pursuant to the first *Schmid* factor.

### 2. The spoliation of the truck severely prejudices Ford

Under the second *Schmid* factor, the Court must consider the degree of prejudice suffered by the opposing party. *Schmid,* 13 F.3d at 79. The Remys' action against Ford is predicated on their theory that a manufacturing and/or design defect existed in the truck. When the alleged defect is a manufacturing defect rather than a design defect, courts have determined that much more prejudice occurs on the loss of the product. *Id.* at 80. Prejudice is increased under these circumstances because a manufacturing defect generally occurs on a one time basis. *Id.* at 79. Loss of the manufacturing defect product therefore prohibits defendant from analyzing the defect and preparing a defense. *Lee v.*

*Boyle-Midway Household Prod. Inc.*, 792 F. Supp. 1001, 1005 (W.D. Pa. 1992).

In design defect cases, courts have ordered dismissal upon plaintiff's loss of the product because inspection of the product may have revealed that it was abused, misused etc., which are defenses to a products liability claim. *Lee*, 792 F. Supp at 1006. In *Hirsch v. General Motors*, the court considered a case where a Cadillac was destroyed before defendant could examine it. *Hirsch*, 266 N.J. Super. 222, 628 A.2d 1108. In determining that defendant was prejudiced, the court stated: "The Cadillac is central, and thus relevant and material, to this litigation. It is the best evidence to determine whether plaintiff's claims are truthful and to ensure that the results will be accurate." *Id.* at 251.

In this matter, as in *Hirsh*, the vehicle is the most important piece of liability evidence. Yet, in this matter, Ford did not have an opportunity to have its own experts, or an independent expert, inspect the truck prior to the truck's disappearance. It would be improbable for Ford to prepare a reasonable defense against the Remys' manufacturing defect allegation and severely prejudicial for Ford to prepare against the Remys' design defect allegation without ever having the opportunity to examine the vehicle in question. Whether the evidence was destroyed or lost accidentally or in bad faith is irrelevant, because in this matter Ford suffers the same severe, irreparable prejudice; specifically, Ford is unable to challenge the evidence or respond to it. Therefore, pursuant to the second *Schmid* factor it is evident to this Court that Ford is severely prejudiced by the disappearance of the truck.

### 3. Dismissal is an appropriate sanction against Remy

Under the final *Schmid* factor, the court must determine whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct in the future. *Schmid*, 13 F.3d at 79. This court has the inherent power to impose sanctions against a party that has destroyed evidence which is relevant to a legal proceeding. *See Baliotis v. McNeil*, 870 F. Supp. 1285, 1289 (M.D.Pa 1994) ("Authority to impose sanctions for the destruction of relevant evidence is recognized under the inherent power of district courts to utilize sanctions in order to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123,

115 L. Ed. 2d 27 (1991)); *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (also citing *Chambers); Donato v. Fitzgibbons*, 172 F.R.D. 75, 81 (S.D.N.Y. 1997). In its discretion, the court may impose a wide range of sanctions for the spoliation of evidence depending upon the severity of the circumstances. *See, e.g., Bowman v. American Med. Sys., Inc.*, 1998 U.S. Dist. LEXIS 16082, at 5 (E.D. Pa. Oct. 9, 1998). (The decision to impose sanctions, as well as the appropriate sanction to be fashioned, lie within the sound discretion of the trial court.") Sanctions imposed in this circuit include monetary fines, an adverse inference, and exclusion of evidence, as well as judgment against the offending party.

Courts within the Third Circuit Court of Appeals' jurisdiction have imposed dispositive sanctions for spoliation where the circumstances warrant them. *In re Complaint of Wechsler*, 121 F. Supp. 2d 404 (D. Del. 2000), the court considered the appropriate sanction in a case arising out of the destruction of a fire-damaged ship. Following the fire, the ship was raised, but interested parties were unable to inspect the damage and determine the cause of the fire. *Id.* In that matter, the Court justified imposing a dispositive sanction on the ship owner. *Id.* Courts in other jurisdictions have also issued dispositive sanctions against an offending party for spoliation, specifically where only one party had an opportunity to inspect the property in question.

For example, in *Thiele v. Oddy's Auto & Marine, Inc.*, 906 F. Supp. 158, 162 (W.D.N.Y. 1995) the court imposed dispositive sanctions where the other party did not have an opportunity to inspect the allegedly damaged property at issue. The *Thiele* court explained, "when one side is completely deprived of the opportunity to inspect the evidence because it was destroyed after the other side had a chance to examine it, then sanctions for spoliation are generally appropriate." *Id.* at 162-63. The *Thiele* court held that where ["the plaintiff] is plainly at fault for allowing the boat to be placed in a landfill, any claims against [the third-party defendant] must be dismissed." *Id.; see also Baliotis v. McNeil*, 870 F. Supp. 1285, 1290-1291 (M.D. Pa. 1994) ("at a minimum an opportunity for inspection should be afforded before relevant evidence is destroyed."). In 1998, the District Court of Pennsylvania held that, "no sanction other than outright dismissal is appropriate given the culpability of the [p]laintiff for the spoliation of the evidence and the impossible task [the d]efendant would face defending against this action as a result

150

of it." *Bowman v. American Med. Sys., Inc.*, 1998 U.S. Dist. LEXIS 16082, at 5, 6 (E.D. Pa. Oct. 9, 1998); *see also China Ocean Shipping v. Simone Metals, Inc.*, 1999 U.S. Dist. LEXIS 16264, at 4 (N.N. Ill. 1999). Finally, in 1999 the United States District Court for the Northern District of New York held that "no sanction short of dismissal would put [the defendants] in their rightful position since they would be unable to properly defend against [the plaintiffs'] claims." *Beers v. General Motors Corp.*, 1999 U.S. Dist. LEXIS 12285, at 5 (N.D.N.Y. May 17, 1999).

The case at bar is such a circumstance that warrants dismissal. The truck is the most important piece of evidence in this case. It is clear that Remy is at fault for the disappearance of the vehicle and it is equally apparent that Ford is severely and irrevocably prejudiced by the fact that the vehicle is unavailable. The lesser sanctions of issue or evidence preclusion are not viable alternative sanctions because without the truck as evidence, it is impractical for Plaintiffs to substantiate an allegation of a defect in the truck and improbable for the Defendant to competently defend against Plaintiffs' allegations. In this matter, where the sole theory of liability revolves around a defect to the very item missing, the parties will be unable to effectively show that the vehicle in fact malfunctioned, or that the malfunction occurred for reasons other than a defect. A lesser sanction than dismissal is thus inappropriate as it does not cure the prejudice to Ford.

■ Accordingly, pursuant to the third *Schmid* factor, considering the seminal importance of the truck as evidence, Remy's fault in "losing" the truck and the resulting inability of Ford to defend against Plaintiffs claims when the truck in question has disappeared, this Court finds that this is a case where the spoliation goes to the very foundation of the cause of action. No sanction short of dismissal will level the playing field between the parties and as such the sanction of dismissal is warranted. The court does not impose this sanction lightly. It is the most severe penalty that can be handed down. However, after considering the circumstances of this case, the sanction of dismissal is the only sanction which can adequately punish the Remys for the conduct which occurred here while, at the same time, sending a message to other litigants that this type of behavior will not be tolerated by the court.

## B. Lack of Prosecution

■ Defendant requests that this matter be dismissed for lack of prosecution. After analysis of the six *Poulis* factors, the Court finds that this matter also warrants dismissal under *Poulis*. The Third Circuit addressed dismissal for lack of prosecution in the case of *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984). A six part test is considered in determining whether a trial court abused its discretion in dismissing a case pursuant to Rule 41(b); the test is as follows: (1) the extent of the offending party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanction other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.*, at 868. However, a trial Court does not have to discern all of these factors to warrant a dismissal under this rule. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988).

The court will address each *Poulis* factor in turn.

### 1. Personal Responsibility

■ Based upon an examination of the facts, the record reflects little direct evidence that the Remys are personally responsible for failing to prosecute this matter. However, this factor is not determinative. *Berry v. St. Thomas Gas Company*, 36 V.I. 64 (Terr. V.I. 1997). Although sanctions against a delinquent lawyer are preferred in certain cases, claimant "may justly suffer dismissal because of his counsel's unexcused conduct." *Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 873 (3d Cir. 1994) (*quoting Link v. Wabash R.R.*, 370 U.S. 626, 633, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962) (citation omitted). This factor does not weigh against the Plaintiffs.

### 2. Prejudice to opposing counsel.

■ Ford is prejudiced by the Remys' delay. Prejudice to an adversary provides substantial support for dismissal. *Adams*, 29 F.3d at 873. "Prejudice" under the *Poulis* test does not refer to "irremediable" harm. *Curtis T. Bedwell and Sons Inc. v. International Fidelity Insurance Company*, 843 F.2d 683, 693 (3d Cir. 1988). Rather, it can consist of the

extra costs of repeated delays and filing of motions necessitated by improper behavior on the part of the plaintiffs. *Poulis*, 747 F.2d at 868; *Andrews v. Government of the V.I.*, 25 V.I. 284, 295 (1990).

The Remys' failure to prosecute prejudices Ford. First, Ford served several interrogatory requests on Plaintiffs. When the Plaintiffs did respond to those requests the responses came years later. Second, the Remys have not propounded a single discovery request on Ford. Without the mutual exchange of information the integrity of the discovery process is fractured. In this matter without information obtained through the discovery process, the Defendant cannot mount a reasonable defense against Plaintiffs' allegations. Thus counsel for Ford is prejudiced. This factor weighs against the Remys.

### 3. History of Dilatoriness

The Remys have a clear history of dilatoriness. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874. When a plaintiff has failed to conduct any discovery in a lawsuit that has been filed more than six years and in more than five years has not filed any papers to advance the resolution of the case ... the case warrants dismissal. *Boyd-Richards v. Massac*, 35 V.I. 62 (Terr. Ct. 1996).

The Remys' history of dilatoriness speaks for itself. On March 29, 1996, the Remys filed an action against Ford. During the past nine years, the Remys have failed to notice a single deposition, and have failed to propound a single discovery request on Ford. The age of this case, the Remys' lethargic response to discovery and their absolute failure to propound discovery, considered together, evidence an indisputable history of dilatoriness. Moreover, Plaintiffs' response to Ford's Motion to Dismiss is eleven months late, obviously out of time, clearly perfunctory and completely unresponsive to Ford's Motion to Dismiss. The Plaintiffs' conduct is both inexcusable and consistent with their listless management of this matter. This factor weighs against the Remys.

### 4. Willfulness or Bad Faith

Over time, the Remys' indolence has risen to the level of willful neglect. Under *Poulis,* a Court looks for willful or flagrantly bad faith behavior. *Adams*, 29 F.3d at 875.

153

■ The Remys' unremitting inertia, over a period of years, rises to the level of willful bad faith behavior. These Plaintiffs took the affirmative step to pursue an action in this honorable Court and thus have the duty to affirmatively pursue this action. Furthermore, although Ford filed its Motion to Dismiss on July 29, 2005, the Remys' responded to this motion on June 6, 2006, over nine months later. The Remys' failure to engage this case for years at a time, failure to file a timely response to pleadings including dispositive motions and failure to otherwise pursue this case raises their conduct to the level of willful neglect. This factor weighs against the Remys.

### 5. Alternative Sanctions

■ Dismissal is an appropriate sanction against the Remys. Under the fifth *Poulis* factor, the Court must consider the effectiveness of sanctions less drastic than dismissal. In this case, the Court has not assessed attorney's fees, nor ordered the Remys to provide discovery. However, this honorable court is not a "litigant day care center". *Andrews*, 25 V.I. at 298 (D.V.I. 1990). A trial court has the inherent power to dismiss a case for want of prosecution in order to prevent undue delays in the disposition of pending cases and to avoid congestions in the calendars of the courts. *Virgin Islands Water and Power Authority v. Virgin Island Telephone Corp.*, 18 V.I. 451 (D.V.I. 1981). Ten years after the filing of this action, when it is likely that memories have faded, the vehicle in question has been destroyed by Remy, and the Remys have yet to propound discovery to advance their own case, lesser sanctions will certainly be ineffective. Thus, this factor weighs against the Remys.

### 6. Meritoriousness of the Claim

■ For purposes of balancing factors in favor of and in opposition to motion to dismissal with prejudice as a sanction for dilatory conduct, a claim will be deemed "meritorious" when the allegations of the pleadings, if established at trial, would support recovery by plaintiff. *Poulis*, 747 F.2d at 869-70. *Andrews*, 25 V.I. at 297. The Court finds that the Remys' claim for damages is meritorious. Thus, this factor does not weigh against the Remys.

154

## III. CONCLUSION

██ Four of six *Poulis* factors weigh against the Remys. Thus, dismissal of the instant action for lack of prosecution is warranted under *Poulis*. Additionally, dismissal for spoliation of evidence is warranted under *Schmid.* An Order not inconsistent with this Memorandum Opinion will be entered accordingly.